IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PATRICIA ERVIN, § | |
|    Plaintiff, § | |
| § | |
| v. § | No. 3:11-CV-0442-O (BF) |
| § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|    Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claims of Patricia Ervin ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court considered Plaintiff's Brief, Defendant's Brief, and Plaintiff's Reply Brief and reviewed the record in connection with the pleadings. The final decision of the Commissioner is reversed and remanded for further consideration.

**Background**[1]

**Procedural History**

On April 9, 2009, Plaintiff filed applications for Title II and Title XVI benefits, alleging a disability onset date of January 7, 2009, due to diabetes, an abnormality in her neck and left thumb, and an intermittent head tremor. (Tr. 240, 236, 288, 316-17.) Her claims were denied initially and upon reconsideration. (Tr. 73, 87, 79, 83.) Plaintiff then requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 91.) On December 29, 2009, ALJ Peri Collins held a hearing in Dallas,

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

Texas. Plaintiff, represented by a non-attorney representative, appeared and testified. (Tr. 26.) A Vocational Expert ("VE"), Calvin J. Turner, also testified. (Tr. 135.) The ALJ issued a Notice of Decision–Unfavorable on March 25, 2010, finding Plaintiff "not disabled." (Tr. 9.) Plaintiff timely requested review by the Appeals Council. (Tr. 8.) This request was denied on January 5, 2011. (Tr. 1.) Plaintiff then sought judicial review of the decision under 42 U.S.C. § 405(g).

## Plaintiff's Age, Education, and Work Experience

Plaintiff was born on June 13, 1959, and on the date of her alleged onset of disability, she was 49 years, 6 months, and 25 days old. (Tr. 143.) She was a "younger individual" until June 13, 2010, and was then considered "a person closely approaching advanced age" at all times through the ALJ's March 25, 2010 decision. *See* 20 C.F.R. § 404.1563(c). Plaintiff completed the ninth grade and never earned a General Educational Development ("GED") certificate or received any specialized vocational training. (Tr. 33.) She worked as a medical records clerk, a skilled occupation with an SVP of 4, requiring light physical exertion. (Tr. 58.)

## Plaintiff's Medical Evidence

Plaintiff sustained a repetitive motion injury to her left upper extremity while she was working at Presbyterian Hospital. (Tr. 240, 236, 288.) Objective studies suggested a significant abnormality in her neck as well as her left thumb. (Tr. 316-17, 285.) On January 8, 2009, Plaintiff had spinal surgery to her neck, specifically a discectomy and fusion at the C5-6 level, with cages, plates, and screws. (Tr. 266.)

Subjectively, Plaintiff's pain did not improve. (Tr. 292, 392.) Plaintiff developed an intermittent head tremor within a few months after the surgery. Initial diagnostics revealed no specific abnormalities. (Tr. 243, 317, 363.) Her surgeon noted that her diabetes could interfere with

her recovery. (Tr. 297.) She was tentatively diagnosed with spasmodic torticollis. (Tr. 347.) Later a brain MRI showed: "minimal white matter disease, probably related to microvasculopathy, although a demyelinating process or prior head trauma could produce the same findings." (Tr. 398.) Plaintiff was noted to have anxiety. (Tr. 346.) Moreover, Plaintiff complained about low back pain and an updated MRI to the low back revealed the same abnormality which was previously known. (Tr. 356, 233, 369.)

When Plaintiff lost her ability to pay for the treatment she was receiving, she did not have the follow-up visit with the neurologist. (Tr. 359, 375.) She began follow-up visits at Parkland Hospital. Plaintiff was prescribed medication for panic attacks and followed closely for her diabetes. (Tr. 351, 365.) She was also diagnosed with anemia, anxiety state, back pain, high cholesterol, hypertension and peptic ulcer. (Tr. 385.) She was seen at the ER for chest pains which were "unspecific." (Tr. 443-44.) Finally, she was referred to the Neurology Clinic for her "movement disorder." (Tr. 518, 521.)

### Plaintiff's Testimony at the Hearing

Plaintiff testified that her alleged onset date was January 7, 2009. (Tr. 33.) She said that she had neck surgery on January 8, 2009. (Tr. 34.) Plaintiff testified that she is 5'4.5" tall and weighs 226 pounds. (Tr. 35.) Her past weight had usually been around 150-160 pounds; she attributes her weight gain to steroids. (*Id*.) Plaintiff described her last job as working in the hospital file room pulling charts and pulling carts. (*Id*.) She had started working at the hospital in 1989 and worked there continuously until January of 2009. (Tr. 35-36.) She testified that she had performed various jobs during that time. (Tr. 36.) When she injured herself, she had been pulling charts. She began having bad pain in her left arm which radiated from her arm all the way up her neck. (Tr. 38.)

3

Before her surgery she had tried steroid injections which provided no long term relief. (*Id.*) She had physical therapy after the surgery. (*Id.*) Plaintiff claimed that the surgery made her pain worse. (Tr. 39.) She still has really bad pain in her left arm and in her neck, especially when her head and neck shake. (*Id.*) The shaking started three months after her surgery. (*Id.*) None of her medications have helped. (*Id.*) Plaintiff stated she did not have the tremor before the surgery. (Tr. 39.) Plaintiff was receiving Worker's Compensation because of the injury. (*Id.*) She testified that she still has arm pain at a level of 8 or 9 on a scale of 0-10 and that she has pain every day. (Tr. 40, 41.) The pain comes and goes, lasting an hour at a time. (*Id.*)

Plaintiff testified her medication does not reduce the pain, but it makes her groggy and causes her to sleep several times a day. (Tr. 42, 44-45.) Plaintiff takes some of the medication regularly and some on an as needed basis for pain. (Tr. 43.) Plaintiff did not take any medication before the hearing and her pain was at a level 8. (Tr. 47.) Plaintiff testified that she has been having back pain since 2005. (*Id.*)

Plaintiff said that she has good days and bad days, usually two really bad days in a week. (Tr. 48.) Plaintiff stated she can stand for about an hour and a half, or close to two hours. (Tr. 49.) According to Plaintiff, her standing is restricted by her pain. (*Id.*) Plaintiff told the ALJ that she could walk for about an hour, but when she does, it hurts badly. (*Id.*) Plaintiff tries not to lift with her left hand because it is already in pain, but she can lift "whatever" with her right hand. (*Id.*) Plaintiff sleeps about six hours at night, but her sleep is interrupted by having to go to the bathroom and by pain. (Tr. 50.)

Plaintiff testified that she lies down for two to three hours per day. (Tr. 51.) She lives alone and does some household chores like washing dishes, but her grandson does the vacuuming for her.

4

(Tr. 52.) She cooks television dinners and takes care of her personal grooming. (*Id.*) She does not drive. (*Id.*) She grocery shops with her daughter, but shopping tires her out. (Tr. 53.) She watches television and does word-find games. (*Id.*) Sometimes, she eats three meals a day. (*Id.*) She used to walk and loved walking, but she stopped walking for exercise because it hurts her back. (Tr. 54.)

Plaintiff testified that she used to go to church, but does not go much now. (Tr. 55.) Sometimes friends come and visit her, and sometimes her sister takes her home with her. (Tr. 56.) She summarized that her worst pain is in her left arm and in her neck when her head starts shaking. Sometimes her low back pain hurts badly too, and she stretches her leg out to try to stop the pain. (*Id.*)

### **The ALJ's Decision**

The ALJ ruled at Step 1 of the sequential evaluation of disability that Plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date. (Tr. 14.) At Steps 2 and 3, the ALJ held that Plaintiff suffers from obesity, degenerative disc disease, mild left medial shoulder tenderness to palpation, left trigger thumb without locking, all of which are severe impairments that do not, either singly or in combination with each other, meet or equal the criteria of any of the Listings of Impairments in Appendix 1. (Tr. 15.) Before proceeding to Step 4 of the sequential evaluation, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a wide range of light work with the following additional limitations which are pertinent here: she cannot drive or perform tasks requiring rapid turning of the head; she can frequently finger on the upper left extremity, has no limits regarding her right, dominant hand or arm, and can perform simple one to two step instructions. (*Id.*) The ALJ then relied on the testimony of the VE to find at Step 4 that Plaintiff is unable to perform her past relevant work and at Step 5 that

5

Plaintiff can still carry out the requirements of other jobs that exist in significant numbers in the national economy and, therefore, is "not disabled." (Tr. 21.) All of the jobs that the ALJ described required the use of the left upper extremity for grasping, pushing/pulling, fine manipulation, or repetitive motion tasks. (Tr. 62.)

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Moreover, the terms of 20 C.F.R. § 404.1527 define "medical opinions" and instruct

7

claimants how the Commissioner will consider the opinions.[2] In the Fifth Circuit, "the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d 448, 455 (5th Cir. 2000); *see Floyd v. Bowen,* 833 F.2d 529, 531 (5th Cir.1987).

### Issue

Did the ALJ fail to apply the correct legal standard in assessing the weight to be given to the opinions of Plaintiff's treating physician, Dr. Shade, and if so, were Plaintiff's substantial rights affected?

### Analysis

As noted, Plaintiff contends that (1) the ALJ applied an incorrect legal standard in assessing the weight to be given to the medical opinions of Plaintiff's treating orthopedic specialist, Dr. Shade. (Pl.'s Br. at 6-10.) The Commissioner contends that the ALJ applied the correct legal standard. (D.'s Br. at 6-11.)

### Medical Opinions of Treating Orthopedic Specialist

The ALJ stated the following regarding the opinion of Plaintiff's treating Orthopedic Specialist:

---

[2]The terms of 20 C.F.R. § 404.1527(a)(2) provide:

> (2) Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

8

> In determining the claimant's residual functional capacity, the undersigned considered . . . the physical capacity opinion of Dr. Ronnie Shade, M.D., who opined in September of 2009 that the claimant could not adequately grasp, push, pull or manipulate using her left hand, lift more than 10 pounds, climb, or work full-time because of her overall fatigue and pain (Exhibit 11F1-4). However, these opinions are granted little evidentiary weight in determining the claimant's functional abilities because the claimant admitted to activities of daily living that exceed [the] physician's functional limitation opinions, including doing her own laundry, washing dishes, cooking television dinners, taking showers and dressing herself independently. The claimant additionally testified that she could stand for almost two hours at one time, walk for approximately one hour before becoming short of breath, sit for approximately two hours, and lift 'whatever' amount of weight with her right arm and hand. Moreover, these opinions are granted little evidentiary weight in determining the claimant's functional abilities because they are not consistent with the objective, longitudinal evidence of record, as noted above.

(Tr. 19.)

Clearly, the ALJ did not grant "controlling weight" to Dr. Shade's opinions, as shown by the ALJ's omission from Plaintiff's RFC of Dr. Shade's opinions that Plaintiff needed to avoid reaching and handling, simple grasping or pushing and pulling with the left hand and that she specifically needed to avoid assembly work. (Tr. 388.) Plaintiff contends that because the ALJ did not grant "controlling weight" to the medical opinions of Plaintiff's treating physician, Dr. Shade, the ALJ erred by not applying the factors set forth in 20 C.F.R. § 404.1527(d)(2) in assessing how much weight to attribute to Dr. Shade's medical opinions.[3] (Pl.'s Br. at 6-11.)

---

[3] The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir.1994). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez,* 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir.1994).

The Commissioner contends that the ALJ was not required to apply the regulatory factors to weigh Dr. Shade's opinions because the ALJ specifically considered "competing first-hand medical evidence." (Def.'s Br. at 7.) However, the ALJ failed to point to any "competing first-hand medical evidence" when discussing the weight given to Dr. Shade's opinions. Although the Commissioner attempts to supplement the ALJ's decision in this regard in its brief, the ALJ's decision must stand on its own. *See Newton*, 209 F.3d at 452. According to the ALJ, the justification for rejecting Dr. Shade's opinions is that the ALJ believes them to be inconsistent with the claimant's subjective statements about her daily activities. (Tr. 19.) However, Plaintiff's only testimony about her daily activities that even touches on her left hand restrictions is her statement that although she did not feel she had restrictions with her right hand, she tried "not to lift with the left hand, because it is already in pain." (Tr. 49.) This testimony is not inconsistent with Dr.'s Shade's manipulative restrictions to Plaintiff's left hand.

Section 404.1527(d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* S.S.R. 96-2p. The Commissioner responds that the ALJ carefully considered the entire record, including the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527(d). (Def.'s Br. at 8.) The Commissioner again attempts to cure the ALJ's legal error with new reasoning that includes the Commissioner's admission that Dr. Shade was Plaintiff's treating physician and a discussion of the other § 404.1527(d) factors. (*Id.*) Nevertheless, as stated, "the ALJ's decision

must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 452.

The ALJ failed to consider all six of the factors set forth in § 404.1527(d)(2). Specifically, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the support for the treating physician's opinion, (4) the consistency of the treating physician's opinion with the record as a whole, (5) the treating physician's specialization, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(d)(2). *See also Newton*, 209 F.3d at 456. It is well established that an ALJ must consider all six of the § 404.1527(d) factors if "controlling weight" is not given to a treating physician's medical opinions. 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). *See also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-CV-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998). The ALJ's assertion, much earlier in the opinion, that "the undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," is simply not sufficient. (Tr. 16.)

The only factor the ALJ mentioned was "consistency." The ALJ stated only that Dr. Shade's opinions "are not consistent with the objective, longitudinal evidence of record, as noted above." (Tr. 19.) Because this finding is not supported by citations to the medical evidence, the Court cannot determine what medical evidence, if any, the ALJ relied upon to decide that Dr. Shade's opinions are "inconsistent" with the evidence. Accordingly, the ALJ failed with respect to all six factors.

11

**<u>Substantial Rights</u>**

The Court has concluded that the ALJ applied incorrect legal standards in weighing the medical opinions of Plaintiff's treating specialist, Dr. Shade. Accordingly, the Court must now assess whether those errors affected Plaintiff's substantial rights. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) ("This court will not vacate a judgment unless the substantial rights of a party have been affected"). For the following reasons, the Court concludes that Plaintiff's substantial rights have been affected.

If the ALJ had actually considered the importance of the examining and treatment relationships of Dr. Shade to Plaintiff, the ALJ might have been more reluctant to give Dr. Shade's opinions "little weight." Dr. Shade was Plaintiff's first and primary doctor for her left hand injury. (Tr. 236.) Dr. Shade was a Diplomate with the Board of Orthopaedic Surgery, and he referred Plaintiff to numerous specialists and tracked all of her treatment and recommendations related to the work related injury to her left hand. (Tr. 269-319.) Dr. Shade's treatment of Plaintiff included examinations both before and after her neck surgery and continued from November of 2007 to June of 2009. (Tr. 236, 392-97.) Dr. Shade reviewed all of the objective studies in the record relevant to Plaintiff's neck and hand pain and the left hand work-related injury. (Tr. 393.) If the ALJ had thoroughly reviewed and discussed the supportability and consistency of Dr. Shade's opinions in relation to the other evidence in the record, the ALJ might have recognized that Plaintiff's injury was caused by the type of repetitive manipulative activity the ALJ concluded Plaintiff could still do. For example, according to one doctor who examined Plaintiff:

> Repetitive motion over years with poor postural neck mechanics when added to the task of repetitive lifting of heavy charts can lead both to arthritis spurring to superimposed disc injury that with reasonable medical certainty can cause such an injury.

(Tr. 288.) The fact that the ALJ never indicated an understanding of this aspect of Dr. Shade's medical opinions, or of the medical evidence of a repetitive motion injury, is shown by the ALJ's emphasis on the fact that Plaintiff worked despite her alleged impairments and pain through January of 2009. (Tr. 17 ¶¶1,3; Tr. 18 ¶1.) The ALJ relied upon this fact, mentioned at least four times in the decision, to conclude that Plaintiff was able to work despite her alleged impairments and pain without a significant decline in her overall health. (Tr. 18 ¶ 2.)

Dr. Shade's opinions were based upon his own treatment of Plaintiff, as well as on the records of the physicians to whom he referred Plaintiff as a result of her repetitive motion injury. Careful examination of the source, supportability, and consistency of his opinions might have aided the ALJ in separating what was actually supported by medical evidence and what was the ALJ's own inference (e.g., the ALJ's conclusion that Plaintiff's neck and left hand injury were cured by her surgery). Such additional considerations might have led to a different decision because giving greater weight to Dr. Shade's opinions might have ultimately affected the ALJ's RFC determination. A more limited RFC determination, in turn, would have affected the VE's determination that Plaintiff was capable of performing the jobs of Dry Cell and Battery Assembler, Small Products Assembler, and Switch Box Assembler, all of which require frequent reaching and handling. Thus, a more limited RFC determination might directly affect whether the ALJ found Plaintiff disabled.

Plaintiff's substantial rights were affected by the ALJ's failure to consider the required specific factors to assess the weight to be given to the opinions of Plaintiff's treating physician Dr. Shade. The ALJ might have reached a different conclusion, but for the legal error.

## Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. On remand, the Commissioner should begin the disability analysis at step three of the sequential five-step disability inquiry.

**SO RECOMMENDED**, April 24, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen (14) days after service. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen (14) days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc*)*.